THE STATE v. WRIGHT, *Appellant.*

Division Two, November 9, 1897.

141   333
164   583

1. **Instructions**: EVIDENCE: WHEN INSTRUCTIONS FOR MURDER IN FIRST AND SECOND DEGREES IS WARRANTED. In a quarrel between the brother-in-law of the deceased and another negro, the defendant and deceased were on different sides.   While talking and quarreling, the defendant, who had been holding a dirk-knife open in his hand down at his side, made a rush at the deceased with the open knife. The deceased raised a cane which he held and struck the defendant two licks, the first knocking off his hat, and the second striking him across the shoulder.   The deceased then commenced backing, and as he stepped to the side of the street, slipped and came

near falling. Defendent rushed upon him and struck him in the body with the knife. Deceased, regaining his feet, fled, with the defendant in close pursuit. He fell, after running seventy-five or one hundred yards, and the defendant rushed upon him and stabbed him repeatedly, and death followed in a half hour. It was also shown that there had been a previous difficulty some years before in which defendant shot at deceased, and that defendant had made threats down to a year and a half prior to the murder that he would take deceased's life should there be another difficulty. Evidence *held* sufficient to warrant instructions for murder in the first and second degrees.

2. **Threats:** REMOTENESS. Threats made three or four years before the homicide and repeated down to within a year and a half are not too remote for admission. Remoteness does not affect the competency of the evidence, but only goes to the weight of it.

3. **Self-defense.** Defendant pursued deceased seventy-five or one hundred yards and when he fell repeatedly stabbed him. *Held,* that there was no self-defense in the case.

4. **Instructions:** REASONABLE DOUBT. Where one instruction is given on reasonable doubt it is not error to omit it from another instruction.

5. **Improper Remarks:** PROSECUTING ATTORNEY. Improper remarks of the prosecuting attorney are not reversible error where it appears the trial court stopped and reprimanded him.

*Appeal from Lincoln Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The Supreme Court will not undertake to interfere with the finding of the jury unless there is a total failure of proof. *State v. Goforth,* 136 Mo. 111. (2) The instructions given by the court are in the usual form in such cases, clearly and carefully drawn, and correspond in every essential point to the instructions approved by this court in the case of *State v. Fitzgerald,* 130 Mo. 420. (3) The court properly instructed the jury upon the question of self-defense, and as authority upon this point we refer to the cases of *State v. Paxton,*

126 Mo. 500; *State v. Smith*, 125 Mo. 2.   (4) When the prosecuting attorney in his argument referred to matters outside of the record which met the disapproval of the defendant's attorney, upon his objection thereto the court properly stopped the prosecuting attorney in his argument and reprimanded him.   Such being the case, defendant's objection upon that question is untenable.

SHERWOOD, J.—Because one negro stabbed another to death with a knife he was prosecuted, convicted of murder in the second degree, and his punishment assessed at seventy years in the penitentiary; hence this appeal.   The scene of the tragedy was Troy, in Lincoln county, and in the street in front of the African Baptist church, where a festival was in progress on the night of August 8, 1896.

The facts, briefly told, are in substance these:   On that night the defendant, Dan Wright, and Ed Carter were in attendance.   Early in the evening a difficulty arose between one Robert Shelton, a brother-in-law of Ed Carter, and Ben Guthrie.   The quarrel commenced at the church door, but upon being requested by the persons interested in the festival, they left and went to the middle of the street opposite the church.   On going to the street there seemed to be some eighteen or twenty persons who had by some means become interested in the difficulty, and defendant, Dan Wright, and Ed Carter, were engaged on opposite sides.   While they were standing talking and quarreling the defendant, who had been holding a dirk knife in his hand down by his side and already opened, made a rush at Carter with the open knife in his hand.   Thereupon Carter raised the cane which he held and struck the defendant two licks, the first knocking his hat off, and the second struck him across the shoulder or the back of the neck.

Carter then commenced backing, and as he stepped to the side of the street he slipped and came near falling, when the defendant rushed upon him and struck him in the body, just below the neck and chin. When Carter regained his feet he started up the street with the defendant in close pursuit. They ran perhaps seventy-five or one hundred yards when Carter fell, when the defendant jumped on him, and cut him several times with a knife, which he continued to hold in his hand. Ed Carter then called his brothers to come to his help, that Dan Wright had stabbed him to death. The two brothers, William Carter and Alex Carter, started toward him, and before they had gone but a short distance they met the defendant coming away, walking down the street and going into the house of Mary Wright.

The evidence shows that Carter died within half an hour from the time the fatal stab was given him. The defendant does not appear to have denied doing the killing, but maintains that it was purely a case of self-defense. He did not testify upon the stand, but from the evidence of the witnesses introduced on his behalf it appears that his contention is that the difficulty was brought on by the deceased and that he stabbed him with a knife in order to avoid being seriously injured himself. There was some testimony of a contrary effect to a portion of that introduced on behalf of the State, and there was testimony to the effect that three or four years before the night of the homicide, defendant had gotten into a difficulty with Carter and shot at him, and that immediately after this occurrence defendant made the threat, often repeated, repeated down to within a year and a half or two years of the homicide, that if he ever got into combat with Carter again he intended to kill him.

The indictment is in usual form, and the instruc-

tions are such as have frequently received the approval of this court. Those instructions embraced murder in the first and second degrees, manslaughter in the fourth degree, and self-defense.

I.   It is claimed in the motion for a new trial that instructions should not have been given relative to murder in the first or second degrees. We think differently. The testimony heretofore related was ample for conviction of murder in the first degree, since there were previous threats often repeated; the preparation of the knife and the having it in readiness; the blow with it, then the pursuit of the fleeing victim, and finally, when Carter fell, the jumping on his prostrate body and the infliction of repeated and additional stabs.

II.   And these threats were not too remote for admission. Remoteness does not affect the question of competency; it only goes to the weight of the evidence. *State v. Adams*, 76 Mo. *loc. cit.* 357; 1 Bishop, New Crim. Proc., sec. 1110, and cases cited.

III.   Finally, it is very questionable whether there was any self-defense in the case; certainly there was not when defendant pursued Carter a distance up the street and then after he had fallen repeatedly stabbed him. *State v. Gilmore*, 95 Mo. *loc. cit.* 565.

IV.   Touching the second instruction, it was not erroneous in failing to instruct on reasonable doubt, as this was done in another instruction.

V.   Relative to improper remarks made by the prosecuting attorney, it is enough to say that upon his making such remarks the trial court stopped and reprimanded him. *State v. Howard*, 118 Mo. *loc. cit.* 145, and cases cited.

Holding these views and finding no error in the record, we affirm the judgment. All concur.